| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA & RAYMOND WILLIAMS, et al. | : | CIVIL ACTION |
| v. | : | |
| LOCAL UNION 542, International Union of Operating Engineers, et al. | : | NO. 71–2698 |

COMMONWEALTH OF PENNSYLVA-
NIA and Raymond Williams et al.

v.

LOCAL UNION 542, INTERNATIONAL
UNION OF OPERATING
ENGINEERS, et al., etc.

Civ. A. No. 71–2698.

United States District Court,
E. D. Pennsylvania.

Nov. 10, 1976.

Harold I. Goodman, Robert Reinstein, M. Faith Angell, Margaret E. Anderson, D. Bruce Hanes, Asst. Atty. Gen., Philadelphia, Pa., for plaintiffs.

Abraham E. Freedman, Philadelphia, Pa., John J. McAleese, Jr., Thomas J. McGoldrick, Plymouth Meeting, Pa., for defendants.

## FINDINGS AND MEMORANDUM ORDER

HIGGINBOTHAM, A. LEON, District Judge.

Five weeks ago, during the afternoon of Tuesday, September 28, 1976, I found Abraham E. Freedman, Esquire, guilty of a criminal contempt committed in the actual presence of the court, and pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure he was sentenced to thirty (30) days. The service of the sentence was deferred. He was placed on his own recognizance to challenge the validity of that order. The matter is now before the Court of Appeals for the Third Circuit and it is due for argument in December of 1976. The notes of testimony of September 28, 1976, and my opinion of October 6, 1976 related to the contempt finding are hereby incorporated

as an analysis of what I deem to be the relevant law pertaining to the Federal Rules of Criminal Procedure.

I had hoped fervently that the previous contempt finding and sentence would cause Mr. Freedman to thereafter proceed within the confines of professional conduct required of counsel. Unfortunately, Mr. Freedman's conduct has again reached the level of such defiant and contumacious refusal to comply with the trial rulings of the Court that it is regrettably necessary to determine whether he is again guilty of criminal contempt in violation of Rule 42(a) of the Federal Rules of Criminal Procedure.

To put the instant factual issue in context, on the morning of November 9, 1976 the plaintiffs put on the stand Samuel Franklin Long as a witness for direct examination. In substance he was questioned about his work experience as to the equipment which he had operated and as to his visit to a site where persons were being trained to use land moving equipment.

The instant problem pertains to whether Mr. Freedman willfully defied my ruling as to the scope of cross-examination which I would permit of Mr. Long. To put the matter in its factual context, Mr. Freedman had marked as Document U–186 the work record of Samuel Franklin Long as kept by the Union. It pertained to events which took place subsequent to April, 1965 and thus subsequent to the two specific job situations at Morrisville and Delaware about which Mr. Long had testified. The work record of an operating engineer is substantially different than the normal work record of an industrial employee. As an example, Mr. Long's work record on U–186 has 112 separately dated entries which make specific reference to separate jobs on which he worked. Since plaintiff had not made reference to work record U–186, I ruled that reference to that document was not permissible on cross-examination. When Mr. Freedman attempted to use this work record as to events subsequent to 1965, plaintiff's counsel, Mr. Reinstein, noted:

"Objection, Your Honor. Mr. Long's work history in this work record is beyond the scope of direct."

My ruling was:

"THE COURT: I will sustain objections about his work record on matters other than the Morrisville and Delaware jobs, which are the only things he was questioned about on direct examination." [N.T. 6517]

"THE COURT: Mr. Freedman, just so that you will understand the nature of my ruling, anything which is in U–186, if you question the witness about those transactions unless they pertain to the only two jobs of which this witness has testified, I will sustain an objection thereto. And you have an exception.

So it is not necessary for you to read through these several pages." [N.T. 6518]

My purpose in limiting the form of cross-examination was obvious. At this point, ten months after the trial began, I did not want the transcript to be unduly lengthened with the reading to the court stenographer of a whole series of notations which I had precluded from cross-examination. Since the document was already marked it was part of the trial record for me or an appellate court to review. Attempting to further protract this case, Mr. Freedman proceeded to say what his offer of proof was. From my experience with him in the past where extended offers of proof were made and statements from documents which have already been marked as a part of the record have been read in for pages and pages of testimony, I did not want this trial to be further unnecessarily protracted. I advised him that he could proffer anything in U–186, either the entire statement or selected portions, and that he should note the dates of the transactions as given on U–186 and then "the record will speak for itself." (6520) I directed him to give merely the dates of the entries, since obviously a reference to the dates would reveal the issue or factual statement for the proffer of proof which Mr. Freedman claims he wanted to make. He was warned five times to not continue reading into the record matters beyond the date of the entry. On the sixth occasion I said:

"THE COURT: Mr. Freedman, I am giving you the opportunity to make your offer of proof; and your offer of proof is that you would read into the record certain specific entries which I noted on certain days. That is all I have to have, and automatically that is incorporated in the record.

But what I don't want, Mr. Freedman, is to just have a whole series of entries read into the record because I have already ruled that they are precluded because they are not within the scope of the direct.

So I am trying to accommodate you and give you maximum latitude by getting you to note the dates.

And as I have said before, my ruling applies to all of the entries here."

He continued to flout my order, even after the eighth warning, by claiming "I've got to tell the Court of Appeals of what my offer of proof is, because neither Your Honor or the Appellate Court will know what it means when you read it" (referring to the docket entries). (6525) I am confident the judges of the Court of Appeals are endowed by their creator with the capacity to read the English language and to understand it. We need not take hours of testimony while Mr. Freedman reads entries which are *already* a part of the record. I gave him fifteen opportunities to give the record entries by merely noting the alleged date of the entry which he wanted to use on the work record, so that we could therefore proceed. For fifteen times he *willfully, purposely,* and in a most deliberate fashion refused to follow my order as to what should be done in his alleged proffer of proof but continued to proceed in his own fashion. More than an hour of time was taken spanning many pages of testimony and in deliberate defiance of my trial ruling.

If Mr. Freedman's defiant conduct is to be tolerated or sanctioned, this trial will never end. The doctrines I stated in my

October 6, 1976 Memorandum are equally applicable to the events of November 9, 1976:

> "Mr. Freedman's conduct was so egregious that to tolerate it the judicial process would degenerate to whatever might be the personal whims of counsel on any particular day. To grant him the latitude he seeks, one might as well have counsel wear the robes, ascend the bench and then make irrevocable rulings while the trial judge patiently awaits the command of counsel. A court trial is not a process in anarchy to be engineered by trial counsel; rather it is an effort to try the case within the parameters of the historic role where there is always some semblance of order and rationality."

Mr. Freedman's persistent defiance must be put in the context of an already protracted trial which could be extended unlimitedly if counsel is granted the latitude to go on endlessly reading into the record those matters which have *already* been precluded *and* which are already a matter of record. In such a context Mr. Freedman could have extended for three or four hours the "cross-examination" of Mr. Long on matters which had already been precluded.

The conduct of Mr. Freedman has been so contumacious and in such willful defiance of precise court rulings that it is difficult to conceive of such actions emanating from any rational person who has been trained in the law. Thus, the only explanation for such conduct is that Mr. Freedman is deliberately pursuing a course whereby he desires to use contumacious and contemptuous conduct as a basis to delay completion of this trial by reason of this Court having to impose criminal sanction commensurate with the magnitude of his breach of professional conduct. Though I find that his conduct was deliberate, willful, and constitutes a contempt in the actual presence of the court and in violation of Rule 42(a) of the Federal Rules of Criminal Procedure, in this instance I refuse to impose the type of sanction which would be permissible, an additional criminal sentence, because it would further delay this trial. I therefore am imposing on Mr. Freedman a fine in the amount of five hundred dollars ($500.00). It is imposed with the full awareness that the fine should bear some reasonable relation to the nature and gravity of the contumacious conduct. [*U. S. v. Conole,* 365 F.2d 306, 308 (3d Cir. 1966)].